IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DENNIS ROY PETERSON,

Petitioner,                        No. CIV S-02-1293 MCE JFM P

vs.

JOE MCGRATH, Warden, et al.,

Respondents.                FINDINGS AND RECOMMENDATIONS

_____/

Petitioner is a state prisoner proceeding through counsel with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2000 conviction on possession of cocaine for sale and other drug-related offenses.  Petitioner claims that he suffered ineffective assistance of appellate counsel because he did not raise a claim that petitioner's trial counsel rendered ineffective assistance when he failed to challenge the trial court's use of jury instructions CALJIC 2.11.5 and 17.41.1.  (Second Amended Petition, filed January 23, 2004, at 5.)[1]

---

[1] The facts surrounding petitioner' commitment offense are not relevant to the claim at bar and, therefore, will not be repeated herein.

1                                    ANALYSIS

2    I.  Standards for a Writ of Habeas Corpus

3              Federal habeas corpus relief is not available for any claim decided on the merits in

4    state court proceedings unless the state court's adjudication of the claim:

5                    (1) resulted in a decision that was contrary to, or involved an
                     unreasonable application of, clearly established Federal law, as
6                    determined by the Supreme Court of the United States; or

7                    (2) resulted in a decision that was based on an unreasonable
                     determination of the facts in light of the evidence presented in the
8                    State court proceeding.

9    28 U.S.C. § 2254(d).

10             Under section 2254(d)(1), a state court decision is "contrary to" clearly

11   established United States Supreme Court precedents if it applies a rule that contradicts the

12   governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

13   indistinguishable from a decision of the  Supreme Court and nevertheless arrives at different

14   result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406

15   (2000)).

16             Under the "unreasonable application" clause of section 2254(d)(1), a federal

17   habeas court may grant the writ if the state court identifies the correct governing legal principle

18   from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

19   prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

20   simply because that court concludes in its independent judgment that the relevant state-court

21   decision applied clearly established federal law erroneously or incorrectly.  Rather, that

22   application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75

23   (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

24   question, is left with a 'firm conviction' that the state court was 'erroneous.'")

25             The court looks to the last reasoned state court decision as the basis for the state

26   court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court

                                          2

1 reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

2 habeas court independently reviews the record to determine whether habeas corpus relief is

3 available under section 2254(d).  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

4 II.  Petitioner's Claims

5        a.  Legal Standards for Ineffective Assistance of Appellate Counsel

6              The Sixth Amendment guarantees the effective assistance of counsel.  The United

7 States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

8 Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of

9 counsel, a petitioner must first show that, considering all the circumstances, counsel's

10 performance fell below an objective standard of reasonableness.  See Strickland, 466 U.S. at

11 687-88.  After a petitioner identifies the acts or omissions that are alleged not to have been the

12 result of reasonable professional judgment, the court must determine whether, in light of all the

13 circumstances, the identified acts or omissions were outside the wide range of professionally,

14 competent assistance.  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).

15              Second, a petitioner must establish that he was prejudiced by counsel's deficient

16 performance.  Strickland, 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable

17 probability that, but for counsel's unprofessional errors, the result of the proceeding would have

18 been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine

19 confidence in the outcome."  Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224

20 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's

21 performance was deficient before examining the prejudice suffered by the defendant as a result of

22 the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of

23 lack of sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280 F.3d 949,

24 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

25              In assessing an ineffective assistance of counsel claim "[t]here is a strong

26 presumption that counsel's performance falls within the 'wide range of professional assistance.'"

1   Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689).  There

2   is in addition a strong presumption that counsel "exercised acceptable professional judgment in

3   all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing

4   Strickland, 466 U.S. at 689).  However, that deference "is predicated on counsel's performance

5   of sufficient investigation and preparation to make reasonably informed, reasonably sound

6   judgments."  Mayfield v. Woodford, 270 F.3d 915, 927 (9th Cir. 2001) (en banc)).

7           The Strickland standards apply to appellate counsel as well as trial counsel.  Smith

8   v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).

9   However, an indigent defendant "does not have a constitutional right to compel appointed

10  counsel to press nonfrivolous points requested by the client, if counsel, as a matter of

11  professional judgment, decides not to present those points."  Jones v. Barnes, 463 U.S. 745, 751

12  (1983).  Counsel "must be allowed to decide what issues are to be pressed."  Id.  Otherwise, the

13  ability of counsel to present the client's case in accord with counsel's professional evaluation

14  would be "seriously undermined."  Id.  See also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th

15  Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is

16  not even particularly good appellate advocacy.")  There is, of course, no obligation to raise

17  meritless arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88 (requiring a

18  showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing

19  to raise a weak issue.  See Miller, 882 F.2d at 1434.  In order to demonstrate prejudice in this

20  context, petitioner must demonstrate that, but for counsel's errors, he probably would have

21  prevailed on appeal.  Miller, 882 F.2d at 1434, n.9.

22          b.  CALJIC 2.11.5

23          Petitioner claims he sustained ineffective assistance of appellate counsel because

24  appellate counsel, in the Petition for Review filed in the California Supreme Court, did not raise

25  a claim that petitioner's trial counsel rendered ineffective assistance when trial counsel failed to

26  challenge the trial court's use of jury instruction CALJIC 2.11.5.  Petitioner raised the substance

1 of this claim on direct appeal.  Petitioner was granted leave to pursue the ineffective assistance of

2 appellate counsel claim in the state supreme court and, on July 9, 2003, the California Supreme

3 Court rejected this claim without comment.  (Ex. F, Answer, filed March 4, 2004.)

4         The last reasoned state court rejection of the merits of the jury instruction claim is

5 the decision of the California Court of Appeal for the Third Appellate District.  The state court of

6 appeal wrote:

7 > [Petitioner] claims the trial court erred in giving two jury
> instructions and that reversal is warranted notwithstanding his

8 > failure to object to the instructions.

9 > This court may review "any instruction given . . . even though no
> objection was made thereto in the lower court, if the substantial

10 > rights of the defendant were affected thereby."  (Pen. Code,
> § 1259.)  "Substantial rights are affected if the error 'result[s] in a

11 > miscarriage of justice, [i.e.,] making it reasonably probable
> defendant would have obtained a more favorable result in the

12 > absence of error.'"  (*People v. Elsey* (2000) 81 Cal.App.4th 948,
> 953-954, fn. 2 [brackets in original], quoting *People v. Andersen*

13 > (1994 26 Cal.App.4th 1241, 1249; but see *People v. Arredondo*
> (1975) 52 Cal.App.3d 973, 978 [The cases equate 'substantial

14 > rights' with reversible error, i.e., did the error result in a
> miscarriage of justice?"].)

15

16 > Accordingly, our review is limited to determining whether the two
> instructions challenged by [petitioner] constituted a miscarriage of
> justice such that it is reasonably probable [petitioner] would have

17 > obtained a more favorable result if not for the error.  As discussed
> below, we find no prejudicial error.

18

19 > First, [petitioner] claims the trial court erred in instructing the jury,
> pursuant to CALJIC No. 2.11.5, not to consider why other
> individuals involved in the crimes were not being prosecuted at the

20 > trial.[2]  [Petitioner] claims use of the instruction prevented jurors
> from properly considering Karen Ristau's bias, interest, and

21 > motives in testifying against [petitioner].

22

23     [2]  As read to the jury, the instruction provided:  "There has been evidence in this case
indicating that a person other than the [petitioner] was or may have been involved in the crimes

24 for which the [petitioner] is on trial.  There may be other reasons why that person is not here on
trial.  Therefore, do not discuss or give any consideration as to why the other person is not being

25 prosecuted in this trial or whether he or she has been or will be prosecuted.  Your duty is to
decide whether the [P]eople have proved the guilt of the [petitioner] on trial."  (CALJIC No.

26 2.11.5.)

1      The trial court should not have given the instruction because each
       person involved in the criminal conduct at issue testified.
2      "'CALJIC No. 2.11.5 . . . should not be given when a
       nonprosecuted participant testifies because the jury is entitled to
3      consider the lack of prosecution in assessing the witness's
       credibility.' [Citations.]" (*People v. Williams* (1997) 16 Cal.4th
4      153, 226; see also Use Note to CALJIC No. 2.11.5.)

5      Nevertheless, the error was not prejudicial.  Given other jury
       instructions and closing argument, there is little danger the jury
6      failed to consider relevant issues of witness credibility.  (*Cf. People
       v. Williams*, *supra*, 16 Cal.4th and p. 227; *People v. Carrera*
7      (1989) 49 Cal.3d 291, 312-313.)  The jury received the standard
       instruction asking them to consider the instructions as a whole.
8      (CALJIC No. 1.01.)  Another instruction indicated the jury should
       consider "anything" relevant to witness credibility, including "the
9      existence or nonexistence of a bias, interest or other motive" on the
       part of the witness and "whether the witness is testifying under a
10     grant of immunity."  (CALJIC No. 2.20.)  The jury was also told
       that accomplice testimony incriminating [petitioner] "should be
11     viewed with caution."  (CALJIC No. 3.18 (1999 rev.).)  In closing
       argument, both the prosecutor and the defense counsel discussed
12     factors relevant to Ristau's credibility, including the agreement she
       had received from the prosecution.

13

14   (Ex. B to Answer, <u>People v. Peterson</u>, No. C036573, slip op. at 4-6 (July 9, 2001)).  Thus, the

15   state court found it was error to use CALJIC 2.11.5, but found the error was not prejudicial.

16          At trial, Karen Ristau testified that she had pled to felony possession and being

17   under the influence stemming from her arrest on February 9, 2000, that she was awaiting

18   sentencing on those charges, and that the case in sentencing had nothing to do with her testimony

19   in the instant case.  (RT 168-69.)  She further testified that the under the influence charge related

20   to her involvement in the incidents at issue herein, which occurred on March 2, 2000, had been

21   dismissed.  (RT 170.)  Defense counsel was permitted to cross-examine Ms. Ristau about the

22   plea agreement reached with the prosecution (RT 182-84), and admitted the District Attorney's

23   April 19, 2000 memo concerning the agreement into evidence as Exhibit 41.  (RT 183.)

24          In addition to the disputed instruction, the trial court instructed the jury on how to

25   evaluate witness testimony (CALJIC No. 2.20) as follows:

26   /////

1

2

3

4

> Every person who testifies under oath [or affirmation] is a witness.
> You are ths sole judges of the believability of a witness and the
> weight to be given the testimony of each witness. In determining
> the believability of a witness you may consider anything that has a
> tendency to prove or disprove the truthfulness of the testimony of
> the witness, including but not limited to . . . [t]he existence or
> nonexistence of a bias, interest or other motive. . . .

5  (CT 154.)  The jury was also instructed on how to resolve discrepancies in testimony (CT 144),

6  how to weigh conflicting testimony (CT 157), and how to address a witness who willfully

7  testifies falsely (CT 156).  The jury was also instructed on the definition of accomplice (CT 174)

8  and, if the witness was found to be an accomplice, that the testimony of that witness should be

9  viewed with caution (CT 175).

10         Petitioner maintains that the erroneous use of CALJIC 2.11.5 rose to the level of a

11  constitutional violation because it interfered with petitioner's right to present his defense and "to

12  meaningfully confront his accusers by placing them before the jury in their proper perspective."

13  (Pet.'s January 23, 2004 Mem. Ps & As at 21.)  Petitioner argues that because this error was of

14  constitutional magnitude, the court should employ the harmless error standard of Chapman v.

15  California, 386 U.S. 18 (1967).  (Pet.'s January 23, 2004 Mem. Ps & As at 22.)  However,

16  petitioner contends this error cannot be deemed harmless under any standard because this case

17  was close, as the jury deliberated over three days, at one point sending a note to the trial judge

18  that it had deadlocked.  (Pet.'s January 23, 2004 Mem. Ps & As at 22.)

19         A challenged instruction violates the federal constitution if there is a "reasonable

20  likelihood that the jury has applied the challenged instruction in a way that prevents the

21  consideration of constitutionally relevant evidence."  Boyde v. California, 494 U.S. 370, 380,

22  (1990).  "When considering an allegedly erroneous jury instruction in a habeas proceeding, an

23  appellate court first considers whether the error in the challenged instruction, if any, amounted to

24  'constitutional error.'"  Morris v. Woodford, 273 F.3d 826, 833 (9th Cir.2001) (quoting Calderon

25  v. Coleman, 525 U.S. 141, 147 (1998)).  To determine constitutional error,

26  /////

7

1
2
3
4
5

> an appellate court asks whether there is a reasonable likelihood that
> the jury has applied the challenged instruction in a way that
> prevents the consideration of constitutionally relevant evidence.
> That inquiry also can be described as having two parts:  (1)
> whether there is a reasonable likelihood that the jury understood an
> assertedly ambiguous instruction to mean what the defendant
> suggests it means; and (2) if so, whether the instruction, so
> understood, was unconstitutional as applied to the defendant.

6  Id. (citation and internal quotation marks omitted).  Where CALJIC 2.11.5 is given in error, the

7  court must review the totality of the trial court's instructions to the jury to determine whether

8  there was constitutional error.  Allen v. Woodford, 395 F.3d 979, 1014 (9th Cir. 2005).

9          If the court finds constitutional error, then it applies the test for harmless error

10  from Brecht v. Abrahamson, 507 U.S. 619 (1993).  Under Brecht, the appellate court considers

11  whether the error had a " 'substantial and injurious effect or influence in determining the jury's

12  verdict.' "  Id. at 637 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).  "If we are

13  in grave doubt as to whether the error had such an effect, the petitioner is entitled to the writ."

14  Coleman v. Calderon, 210 F.3d 1047, 1051 (9th Cir.2000).

15          Petitioner concedes he was permitted to cross-examine Ms. Ristau about the

16  immunity deal she reached with the prosecution.  (Pet.'s January 23, 2004 Mem. Ps & As at 21.)

17  Even though the trial court was mistaken to give CALJIC 2.11.5, any mistake was cured by the

18  instructions read as a whole.  Allen v. Woodford, 395 F.3d 979, 997 (9th Cir. 2005)(Given the

19  totality of the trial court's instructions to the jury, the trial court's instruction not to consider the

20  prosecution status of others involved in Allen's aggravation crimes was not constitutional error.)

21          Here, the jury was specifically instructed regarding witness bias, interest, or other

22  motive.  A rational juror would understand that "anything that has a tendency to prove" the

23  existence of a witness's "bias, interest or other motive," would include any evidence that Ristau

24  received immunity or other favorable treatment from the prosecution.  When read in conjunction

25  with the other instructions regarding witness bias, CALJIC No. 2.11.5 can reasonably be

26  understood to preclude speculation as to prosecution or non-prosecution of other participants, not

1   to preclude consideration of evidence going to the question of witness bias.  Given the trial

2   court's clear instruction that the jury could consider the bias of any witness by reference to

3   "anything" that "has a tendency" to show bias, there is no reasonable likelihood that CALJIC No.

4   2.11.5 would have precluded the jury from considering whether Ristau was biased by favorable

5   treatment from the prosecution.  The jury was also instructed on accomplice liability, such that if

6   the jury found Ms. Ristau to be an accomplice, the jury was instructed to view her testimony with

7   caution.

8          Thus, the court's use of CALJIC No. 2.11.5 did not render the trial fundamentally

9   unfair so as to violate due process.  In light of the trial court's instructions read as a whole, there

10  is no reasonable likelihood that the jury understood CALJIC No. 2.11.5 to bar consideration of

11  Ms. Ristau's motives for testifying.  In order to demonstrate Strickland prejudice in this context,

12  petitioner must demonstrate that, but for counsel's errors, he probably would have prevailed on

13  appeal.  Because this court finds there is no reasonable likelihood that the jury misunderstood its

14  charge based on the instructions as a whole, counsel would not have prevailed on appeal;

15  therefore, appellate counsel was not ineffective for failing to raise this issue in the Petition for

16  Review before the California Supreme Court.  This claim should be denied.

17      c. CALJIC 17.41.1

18          Petitioner claims he sustained ineffective assistance of appellate counsel because

19  appellate counsel did not raise a claim that petitioner's trial counsel rendered ineffective

20  assistance when he failed to challenge the trial court's use of jury instruction CALJIC 17.41.1,[3]

21  which was later disapproved by the California Supreme Court.  People v. Engelman, 28 Cal.4th

22  436 (2002).  This claim was raised by petitioner on direct appeal.  Appellate counsel failed to

23

24      [3] As read to the jury, CALJIC 17.41.1 provided:  "The integrity of a trial requires that
    jurors at all times during their deliberations conduct themselves as required by these instructions.
    Accordingly, should it occur that any juror refuses to deliberate or expresses an intention to
25  disregard the law or to decide the case based on penalty or punishment or any other improper
    basis, it is the obligation of the other jurors to immediately advise the court of that situation."
26  (People v. Peterson, slip op. at 6, n.3.)

1  include this claim in his petition for review filed in the California Supreme Court.

2     Petitioner was granted leave to pursue this claim in the state supreme court and,

3  on July 9, 2003, the California Supreme Court rejected this claim without comment.  (Ex. F,

4  Answer, filed March 4, 2004.)

5     The last reasoned state court rejection of the merits of this jury instruction claim is

6  the decision of the California Court of Appeal for the Third Appellate District.  In relevant part,

7  the state court of appeal wrote:

8     We need not decide whether this instruction was error since any
error was not prejudicial.  (See generally *People v. Molina* (2000)

9     82 Cal.App.4th 1329, 1335-1336.)  The instruction is "not likely to
come into play in most cases" (*id.* at p. 1335), and there is little

10    reason to believe it played any part in the jury's deliberations here.
While [petitioner] emphasizes the length and nature of the jury

11    deliberations and argues the jury might have been inclined toward
nullification based on the facts, there is no indication the jury was

12    inclined to disregard its oath and engage in nullification.  None of
the jurors came forward to complain of any misconduct, and we are

13    confident that each juror diligently performed his or her duties.

14 (Ex. B to Answer, <u>People v. Peterson</u>, No. C036573, slip op. at 6-7 (July 9, 2001)).

15    In <u>Brewer v. Hall</u>, 378 F.3d 952, 956 (9th Cir. 2004), the United States Court of

16 Appeals for the Ninth Circuit held that no clearly established United States Supreme Court

17 precedent supports a contention that CALJIC 17.41.1 violates a constitutional right.  In order to

18 demonstrate <u>Strickland</u> prejudice in this context, petitioner must demonstrate that, but for

19 counsel's errors, he probably would have prevailed on appeal.  Because petitioner's challenge to

20 the use of this instruction is foreclosed by the decision in <u>Brewer</u>, appellate counsel cannot be

21 found ineffective for his failure to include this claim in the petition for review filed in the

22 California Supreme Court.  This claim should therefore be denied.

23    IT IS HEREBY RECOMMENDED that petitioner's application for a writ of

24 habeas corpus be denied.

25    These findings and recommendations are submitted to the United States District

26 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days

1    after being served with these findings and recommendations, any party may file written

2    objections with the court and serve a copy on all parties.  Such a document should be captioned

3    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

4    shall be served and filed within ten days after service of the objections.  The parties are advised

5    that failure to file objections within the specified time may waive the right to appeal the District

6    Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

7    DATED:  August 25, 2005.

8

9                                                    _____
                                                     UNITED STATES MAGISTRATE JUDGE
10

11   001; pete1293.157

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

11